IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | Case No.: 22-MJ-203 (GMH) |
| | : | |
| v. | : | 18 U.S.C. § 231(a)(3) |
| | : | (Civil Disorder); and |
| **JOSEPH BRODY,** | : | 18 U.S.C. § 111(a)(1) |
| | : | (Assaulting, Resisting, or Impeding |
| Defendant. | : | Certain Officers) |
| | : | |

**STATEMENT OF OFFENSE**

Pursuant to Fed. R. Crim. P. 11, the United States of America, by and through its attorney, the United States Attorney for the District of Columbia, and the defendant, Joseph Brody, with the concurrence of the defendant's attorney, agree and stipulate to the below factual basis for the defendant's guilty plea—that is, if this case were to proceed to trial, the parties stipulate that the United States could prove the below facts beyond a reasonable doubt:

***The Attack at the U.S. Capitol on January 6, 2021***

1. The U.S. Capitol, which is located at First Street, SE, in Washington, D.C., is secured twenty-four hours a day by U.S. Capitol Police (USCP). Restrictions around the Capitol include permanent and temporary security barriers and posts manned by USCP. Only authorized people with appropriate identification are allowed access inside the Capitol.

2. On January 6, 2021, the exterior plaza of the Capitol was closed to members of the public.

3. On January 6, 2021, a joint session of the United States Congress convened at the Capitol. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on Tuesday,

November 3, 2020. The joint session began at approximately 1:00 PM. Shortly thereafter, by approximately 1:30 PM, the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

    4.    As the proceedings continued in both the House and the Senate, and with Vice President Pence present and presiding over the Senate, a large crowd gathered outside the Capitol. Temporary and permanent barricades, as noted above, were in place around the exterior of the Capitol, and USCP officers were present and attempting to keep the crowd away from the Capitol and the proceedings underway inside. By shortly after 1:00 PM, the situation at the Capitol had become a civil disorder as that term is used in Title 18, United States Code, Section 231, and throughout the rest of the afternoon the civil disorder obstructed the Secret Service's ability to perform the federally protected function of protecting Vice President Pence.

    5.    At approximately 2:00 PM, certain individuals in the crowd forced their way through, up, and over the barricades. Officers of the USCP were forced to retreat and the crowd advanced to the exterior façade of the building. Officers with the D.C. Metropolitan Police Department were called to assist officers of the USCP who were then engaged in the performance of their official duties. The crowd was not lawfully authorized to enter or remain in the building and, prior to entering the building, no members of the crowd submitted to security screenings or weapons checks as required by USCP officers or other authorized security officials.

    6.    At such time, the certification proceedings were still underway, and the exterior doors and windows of the Capitol were locked or otherwise secured. Members of the USCP attempted to maintain order and keep the crowd from entering the Capitol; however, shortly after 2:00 PM, individuals in the crowd forced entry into the Capitol, including by breaking windows

and by assaulting members of law enforcement, as others in the crowd encouraged and assisted those acts. The riot resulted in substantial damage to the Capitol, requiring the expenditure of more than $2.9 million dollars for repairs.

7. Shortly thereafter, at approximately 2:20 PM, members of the House of Representatives and of the Senate, including the President of the Senate, Vice President Pence, were instructed to—and did—evacuate the chambers. Accordingly, all proceedings of the United States Congress, including the joint session, were effectively suspended until shortly after 8:00 PM on January 6, 2021. In light of the dangerous circumstances caused by the unlawful entry to the Capitol—including the danger posed by individuals who had entered the Capitol without any security screening or weapons check—Congressional proceedings could not resume until after every unauthorized occupant had been removed from or left the Capitol, and USCP confirmed that the building was secured. The proceedings resumed at approximately 8:00 PM after the building had been secured. Vice President Pence remained in the Capitol from the time he was evacuated from the Senate Chamber until the session resumed.

8. The attack on the Capitol on January 6, 2021, constituted a civil disturbance that affected interstate commerce by, among other things, drastically reducing, on that date, the sales of groceries and other goods, shipped in interstate commerce, at Safeway stores in Washington D.C.

### *The Defendant's Participation in the January 6, 2021 Capitol Riot*

9. On January 6, 2021, Brody met up with four of his friends and acquaintances—Jon Lizak, Paul Lovley, Thomas Carey, and Gabriel Chase—to attend former President Donald Trump's rally at the Ellipse in Washington D.C. The four had met each other through their mutual interest and involvement in the political organization America First.

10. After leaving the rally, the group of five entered the U.S. Capitol building after it had been breached by rioters.

11. Brody and his group entered the Capitol building through the Senate Wing Door along with many other rioters at approximately 2:16 p.m. The group then proceeded toward the Crypt. After a few minutes, the crowd within the Crypt, including Brody, pushed past law enforcement personnel and proceeded south into a room containing busts of historical figures, known as the "Corridor of Honorary Citizens." The group moved with the crowd down the hallway and near several offices.

12. Brody and his group reentered the Crypt and entered a room containing a spiral stairwell, then ascended the stairwell. At the top of the stairwell, the group continued forward and entered a small atrium, which displayed a plaque reading, "Speaker of the House Nancy Pelosi." Brody and his group then walked into a conference room within Speaker Pelosi's office suite.

13. The group then left Speaker Pelosi's office and entered the Rotunda, where they loitered for several minutes. At approximately 2:42 p.m., after departing the area of the Rotunda, the group marched together and ascended the House Gallery Stairs to the third level of the Capitol, where they proceeded through the Senate East Corridor. The group proceeded to the Senate Chamber and stopped outside of the doors labeled as Secretary of the Senate's Office and the Senate Gallery Door Number 1.

14. Brody broke off from his group of associates and entered the Senate Chamber. While in the Chamber, Brody held a cell phone in his hand and appeared to photograph or record the interior of the Senate Chamber, including documents and other information on top of and inside several senator's desks (*see* **Image 1**).



**Image 1**

15. Finally, at approximately 2:50 p.m., the group began to exit the Capitol, one at a time, through the Senate Carriage Door. Carey exited the building at approximately 2:50:08 p.m., followed by Lovley and Chase at approximately 2:50:20 p.m. Approximately a minute-and-a-half later, at 2:51:40 p.m., Brody and Lizak exited the Capitol.

16. Eventually, the group moved to the north side of the Capitol. There, law enforcement officers including U.S. Capitol Police Officer H.H., were attempting to keep rioters from breaching the Capitol's North Door. While Officer H.H. attempted to use a fire extinguisher to keep the rioters at bay, Brody grabbed a metal barricade and lifted it up, shoving it up and over a concrete station and into Officer H.H. The force knocked the officer backward (*see* **Image 2**).



**Image 2**

17.     Brody and his group moved to an area outside the Capitol building where news media had set up broadcasting equipment. Although metal barricades had been erected around the equipment, rioters had breached the barricades and begun destroying and looting the media equipment. Brody and his group took some items from the pile of media equipment and Brody ripped out a corded phone.

*Elements of the Offense*

18.     Joseph Brody knowingly and voluntarily admits to the above facts and agrees that they meet all of the elements of 18 U.S.C. § 231(a)(3) and 18 U.S.C. § 111(a)(1), as described below.

19.     The parties agree that Civil Disorder in violation of 18 U.S.C. § 231(a)(3) requires the following elements:

    a. First, the defendant knowingly committed an act with the intended purpose of obstructing, impeding, or interfering with Officer H.H., an officer from the U.S. Capitol Police.

    b. Second, at the time of the defendant's act, Officer H.H. was engaged in the lawful performance of his official duties incident to and during a civil disorder.

    c. Third, the civil disorder in any way or degree obstructed, delayed, or adversely affected commerce or the movement of any article or commodity in commerce, or the conduct or performance of any federally protected function.

20. The parties agree that Assaulting, Resisting, or Impeding Officers in violation of 18 U.S.C. § 111(a) requires the following elements:

    a. First, the defendant assaulted, resisted, opposed, impeded, intimidated, or interfered with Officer H.H., an officer from the U.S. Capitol Police.

    b. Second, the defendant did such acts forcibly.

    c. Third, the defendant did such acts voluntarily and intentionally.

    d. Fourth, Officer H.H. was an officer or an employee of the United States who was then engaged in the performance of his official duties.

    e. Fifth, the defendant made physical contact with Officer H.H. or acted with the intent to commit another felony. For purposes of this element, "another felony" refers to the offense charged in Count 1, Civil Disorder in violation of 18 U.S.C. § 231(a)(3).

### *Defendant's Acknowledgments*

21. The defendant knowingly and voluntarily admits to all the elements as set forth above. Specifically, the defendant admits that, when Brody struck Officer H.H. with the barricade, he knew that Officer H.H. was engaged in the performance of his official duties and that Brody was motivated by such status.

                Respectfully submitted,

                MATTHEW M. GRAVES
                United States Attorney
                D.C. Bar No. 481052

By:    */s/ Eric Boylan*
                Eric Boylan
                Assistant United States Attorney
                Texas Bar No. 24105519
                Capitol Siege Section
                U.S. Attorney's Office
                District of Columbia
                Telephone No: (202) 815-8608
                Email Address: eric.boylan@usdoj.gov

## DEFENDANT'S ACKNOWLEDGMENT

I, Joseph Brody, have read this Statement of the Offense and have discussed it with my attorney. I fully understand this Statement of the Offense. I agree and acknowledge by my signature that this Statement of the Offense is true and accurate. I do this voluntarily and of my own free will. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Statement of the Offense fully.

Date: _____  _____
                                Joseph Brody
                                Defendant

## ATTORNEY'S ACKNOWLEDGMENT

I have read this Statement of the Offense and have reviewed it with my client fully. I concur in my client's desire to adopt this Statement of the Offense as true and accurate.

Date: _____  _____
                                Alexis Gardner
                                Attorney for Defendant

## DEFENDANT'S ACKNOWLEDGMENT

I, Joseph Brody, have read this Statement of the Offense and have discussed it with my attorney. I fully understand this Statement of the Offense. I agree and acknowledge by my signature that this Statement of the Offense is true and accurate. I do this voluntarily and of my own free will. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Statement of the Offense fully.

Date: 1/30/24

_____
Joseph Brody
Defendant

## ATTORNEY'S ACKNOWLEDGMENT

I have read this Statement of the Offense and have reviewed it with my client fully. I concur in my client's desire to adopt this Statement of the Offense as true and accurate.

Date: 2/5/24

_____
Alexis Gardner
Attorney for Defendant